and the United States versus Fish. Give us a minute to collect our papers, too. I'm Harvey Wellstone, on behalf of the defendant, Mark Fisher. I'm going to give you some background information about him.  I've reserved just one minute. One minute doesn't mean anything. Maybe I should give you two minutes. I have such confidence in the integrity of my adversary that I'm sure he won't stray. Let's assume he has integrity. I just think one minute is not enough. Okay. I erred in that respect. Anyway, if you're in the middle of a point and you're interested in it, then we'll just let you keep on going. Thank you. I've had that courtesy before. I don't know. I've just read these. If they please the court. We're both out of the same county. For better or for worse. Here's what the government wants in this case. They essentially want to have an unrestrained and unrestricted ability on the part of the district judge to find sophisticated means in the money laundering context. And they want to cover that with a very restrictive standard of review by this court that would basically insulate all of that unrestrained determination from meaningful review. They want it by conjunction of those two elements in this case to really limit this court's ability to say anything meaningful about sophisticated means. Isn't there a necessity for a legal determination of a standard required for sophisticated money laundering before we then consider the facts? Isn't that determination in part what you're claiming is a factual determination but in essence it's really our determination of what standard should be required for sophisticated money laundering? Well, I think I'm in agreement with Your Honor. To determine if it fits within the enhancement, that's a legal issue. It's plain error, isn't it? It's a matter of law. Our view is that it's a de novo review by this court because it involves interpretation of the initial determination of the guideline. A good example is the one that the government relies on, the Richards case in this circuit, where that case involved whether an individual who took a bribe, a government official, was a high level official. That calls for a two level enhancement. The court's position was, well, that should just be viewed as a factual determination under a clearly erroneous standard because all the district judge there is saying, yes, he's a high level official, or he's not a high level official. It was a very fact-oriented determination. Here, by contrast, you have this concept of sophisticated means, which is essentially an empty vessel. I think I used that expression in my brief. The only thing that can fill that vessel beyond the commentary, which the government makes the point that we're not limited, the district judges shouldn't be limited to the elements that are set out in the commentary, layering and foreign bank accounts and the like. Other than that, there is no content to it. I don't understand what you just said. I'm sorry. I'm saying that I don't think this is a factual determination because otherwise, you're leaving what those facts are entirely to the district judge. At some point, the judge is looking at facts in the case. He's making some factual determination by way of example. He's determining that the parties in the case were using the SIM cards or whatever it's called for the telephones to avoid detection. He says, I find that this is what they were doing. That was part of his decision. So what's wrong with considering that as a matter of fact? As a fact, we're not challenging it. We're not challenging any of that as to how this thing worked. He was saying that they were using several carriers at different places and he was making those factual determinations. Nothing wrong with that. What you're arguing is this just does not fit within what should be considered sophisticated. Yes. I hope I obviously didn't make that point very well. In the Chown case, the court in the court of appeals agreed that the district court in determining what was sophisticated money laundering didn't have to look simply at the language of the guidelines, right? You could infer that. They didn't say that, but they in fact did not refer to other things. They looked at other things. So wasn't it appropriate for the district court here to look at other things? Well, I'm not suggesting that it was totally inappropriate, no. But I think if you want to compare this case to the Chown case, and of course that moves us on to the second part of this, beyond the standard of review, as to whether this was in fact a sophisticated means operation. And I think if you compare this to Chown and virtually compare it to any of the cases that the four or five or six that between us have been able to point to, this case does not fit neatly into any of those. Whether it's the ones that are good for us or the ones that the government feels are good for them. Using several different carriers in different locations and having a fairly sophisticated means of avoiding detection and things like that. I'm not sure about layering. I'm not sure about layering. But using all those devices to avoid detection and also perhaps even international intrigue are not sophisticated means. Well, first of all, I would dispute the involvement of international intrigue. Apparently there was another fellow involved in this state operation, if you will, that was put together by Mr. Dweck that did have some Israeli involvement in some way. But that, as much as the government might like to, I don't think that can be made at Mr. Fish, Rabbi Fish's doorstep. But the other elements you've talked about, Judge Fuentes, this is typical of money laundering. One way or another, concealment is the essence of money laundering. Here, the laundering was really fairly simplistic. Dweck would bring a check to Fish. Which came from Gamach money? No, no, the check came from Dweck. It was from government money, I guess they provided him. And he told them it was from fraudulent activities, that took care of that part of it. And then Fish would deposit it into this Gamach account. And then, a day, two days later, he would meet with Fish, with Dweck, and give cash to him. Now, we don't know where that cash came from. In fact, the government never established in this case, on this record, that it didn't come out of the Gamach account. They seem to have supposedly been... If it had come out of the Gamach account, would you have the same problem? Well, no, I think that would be, to use the word, a paradigmatic instance of no layering, a simple money laundering. A simple money laundering, the most rudimentary would be, I give you the check, you put it into the bank, and you take out the cash, and give it back to the person. This really was not far afield from that. I'm sorry, whose money was being laundered? The one that... The government informant's money, that he told the people he was dealing with, came from illegal activities. It was a made-up story, but he said it came from him dealing in counterfeit goods, or something like that. So, it was the informant's money laundered. This is just for me to know. Did the Gamach really give the money out to poor Jewish people? I don't know. There's no evidence of that. You mentioned layering before. What's the government's contention in your response about layering? Well, I think the government views, as I would understand it, because they say we don't need to have layering, because of the discussion we had earlier, it could be other things. But as to layering, I think, and let me sort of clear up if I'm wrong, that because there are these other people bringing the cash, and delivering it to fish, or delivering it to direct at these different locations, that that's another layer. My response is it isn't. I don't know what else I can say. I don't see that as the type of layering, if you look at the cases, that they talk about. Doesn't that involve different deposits of money into different and various accounts? That's right. Different deposits in different banks before the money gets back to the person who wants it more than. I mean, to me, it seems like a direct use of a check and actually the cash has to be pursued. Yeah, well, that's right. Layering involves more people involved in depositing in different banks. Yes, and in doing something else in between, perhaps, with the money, turning it into a cashier's check or something of the like. No, what you're saying is, the director just gave a check and said, this is from a legal activity, here it is, and give me my cash. He said, this is from a gamak, I think. No, he didn't say that. He didn't say that. It was my client that was the one who used the gamak accounts. And there was no showing, even though the government says, supposing charities, you know, alleged charities, there was no evidence that these were not legitimate charitable accounts. I've never heard, I mean, I've been 80 years in this community, I've never heard of a gamak. Yes, ma'am. I hear. It didn't happen. I haven't been around almost that long, but I had not heard of it either before this, but apparently in this orthodox community that was involved here, that is something that does go on. No one challenged that there can be legitimate gamaks. But I'm trying to respond, although I sort of have forgotten. There's no layering in that situation. And the judge here basically said, well, look, I'm just going to look at this broad expanse of conduct, the fact that there were people involved, it was obviously an organization, can't deny that very well. There were other people who were caught up in the same mind-wandering issue. I was going to say fishnet, is that... Fishnet. Yes, apparently there were. In any case, how were they dealt with in terms of the mind-wandering sentencing, the sophisticated appeals? Well, the only one that I'm really familiar with is the one that the government put forward in their brief. I didn't go and explore the others, but that was Deutch, Levi Deutch. And the government said, well, he got a two-level enhancement and didn't appeal. And that should be considered by this court as some evidence that he deserved it and that the fish deserved it as a co-conspirator, I suspect, of the Deutch. But that was the only one that I did not go into an independent determination of the other people. But there were a fairly large amount of people that were swept up in this. And a fairly large amount of money. Yes, there was. And it lasted over a period of time. And those were the things that Judge Pisano focused on. And our response is, OK, but that's not sophisticated. No, it sounds pretty sophisticated to me. But I guess I'm just unsophisticated. Well, it means, and this court has said that in FUMO, you have reiterated it, that it means especially complex or especially intricate conduct. And my observation in the brief was that if you start lowering this bar as to what it means, pretty soon you're going to have sophisticated mean nothing, mean rudimentary, and the two are just going to meet and there really will be nothing left of the concept. My time is up. Thank you. Keep a few minutes. OK, we'll hear from the government. Good afternoon, Your Honors. David Feeder from the United States. The discussion began with the discussion of the standard of review. I guess I should address that first. In Richards, this court held that we have a clear guideline with a definition in the commentary. And in that case, they're addressing 2C1.2, which is high-level decision-making. And when you have a clear definition, and what the district court is asked to do is essentially make a factual fit analysis to take facts in the record and determine whether or not those facts fit the criteria that the sentencing commission set forward, then this court should review for clear error. That's true with virtually every enhancement. We look at the trial judge's decision for clear error. We could almost never, never overturn that decision in every enhancement, not just this one. I mean, if we adopt your view. I don't know that you need to go that far to say that it's every enhancement that would be looked at under clear error. But that's what you're saying about this one. What I'm saying is that the format and structure of this guideline is very close to the way the sentencing commission structured 2C1.2. So you've got a guidelines commentary that sets forth a clear definition. And it sets forth a number of examples of the types of conduct or the types of facts that would then satisfy that guideline. And that's what should be implied. Aren't you implying, then, that for a district judge to extend the concept of sophisticated money laundering out beyond the examples given, that's a question of fact? I think that my consideration now, in may persuade me otherwise, is that's a decision of law as to how those examples ought to be examples of sophisticated. And that is a determination, a legal determination by the judge to see if the activity satisfies that. And the factual determination is whether that activity actually went on. Okay. So if I understand your question, I do think in the first instance this court has not addressed it previously whether or not a district court can consider evidence that doesn't fit squarely within one of those examples. I think it is a question of law. And I think it's very clear in interpreting the guideline, what the guideline says, which is that these are typically examples, or this type of conduct is typically found in sophisticated laundering. But it doesn't say that there's a requirement that any one of those needs to be met. And then once you establish that you can consider evidence that doesn't fit squarely within any one of those examples, it then becomes a factual determination where the court is really in the best position to view the facts where there's... I'm not sure that there's any significant difference between what you're saying and what the appellate is saying. I think the difference is where we might draw the line. And I think that there's a line at some point in which something is no longer sophisticated. But the district court is in the first instance in the position to make that determination. That this meets the standard. That's right, Your Honor. And then I find the facts there. And then do those facts fit within that definition? And just like the facts in the high-level decision-maker enhancement have to fit within that definition, it's the same basic type of approach that the court has to take here. I mean the other sort of procedure. So the sentencing judge, the district judge, makes that initial determination of what constitutes sophisticated laundering as a matter of law. Is that what you're saying? And then he considers the facts to see if those facts fit within what he has determined to be sophisticated laundering? I think that this court in the first instance, because this has not been addressed elsewhere, is in a position to say whether, as the government has read that guideline, whether or not evidence other than the examples that are listed in the guidelines commentary qualify as sophisticated laundering. Yes, but I don't see any problem with that. Okay. And then the court is then in a position, once that, taking into reward a very clear definition and it provides examples, the district court is just then in the best position to determine whether those facts fit within that guideline. Can we get to whether or not this was a sophisticated launder? It was definitely sophisticated. The district court made a very careful finding and really parsed this record and did what it's supposed to do, which is view the conduct in its entirety, view the scheme in its entirety. And what the court found is that this was a long-running scheme. The court found that Fish and others were personally involved in ensuring that cash was made available almost immediately, often within a couple of days, sometimes within a few hours of setting up the transaction. That's all true of the basic laundering. Mr. Weisbart says, I give you a check, and by the way, the check comes from illegal operations. That's the essence of money laundering. Well, you give me cash. What is sophisticated or complex about that? What's sophisticated is that in order to do these transactions, Fish had to rely on this network or operation. Rabbi Fish controlled a damach. And he had said to the government's informant, Mr. Dweck, you make a bank check to my damach, and I will give you cash from that damach. And thereby, no one will know that that cash came from illicit means. But that's not what he did here. He had to rely on a network where cash was made available by various sources, where he instructed, he got orders, and then instructed his client to bring a bank check so that the illicit proceeds could be deposited into a damach. Dweck brought the bank. He brought the check. A government check. A government check. And exchanged it for cash. And exchanged it for cash that did not come from the account into which that check was deposited. And that's evidence of sophistication. Because the money had to move through some complex means. It didn't come out of that same account. It had to come from elsewhere. And as the recordings of Fish show, Fish explained. So what we see as sophisticated is that the check goes into account A and the cash comes out of account B. What the court found and what the government argues is that that's one indication of complexity. And there are other indications of complexity throughout the entire scheme. The enhancement gives examples of what constitutes sophisticated money laundering. And Mr. Weisbein makes a pretty good point. If you accept it here and really write it down, what sophisticated money laundering is, the examples given are shell corporations. I gather that we're not talking about shell corporations here. Two or more levels of transactions. I gather you haven't shown that in this case. Offshore financial accounts. I don't see that as being present in this case. And fictitious entities. So those are the examples. I don't see any others here. One, two, three, four items which, if found, would support sophisticated money laundering. First, there's no requirement to name a guideline that says that the facts have to fit any one of those examples. But beyond that, there is evidence in this case, and there were facts in this case, that very closely resemble a number of those examples. And we set some of those out in the brief. Was there layering in the same way that the layering is set out in the guideline? No, and we didn't argue it. But what the court found, and found probative of complexity, is that the cash came from an account, or somewhere, other than the Gamak account where the check was deposited. It's not a situation where you have layering as it's set forth in the guideline, where you want to make a series of transactions so that any one of them doesn't appear to be that those monies originated from some illicit means. You want to be able to show somebody, we can look at this transaction and there's nothing that smells bad about it. That's not exactly what happened here. Because the premise was that Dweck was looking to shield these monies from a bankruptcy court. He didn't want these things to be shown at all. But I think the level of complexity that's inherent in that guideline, that you are trying to keep someone from seeing the ultimate source of this cash, is exactly what they did here. That's why they used different Gamaks. That's why they had a convenient entry point for accepting these illicit funds into the system. And then, through a sophisticated way, cash filtered through the network and was made available, again, at a moment's notice, for the customers to pick up. To take another one of the examples, which is fictitious entities or sham corporations, that's kind of the way that these Gamaks are being used. In fact, you might argue that it's... Why not so? Were they being used solely for purposes of generating cash? Solely for the purpose of paying off or using the cash to earn, I guess, a fee? They weren't being used solely for that purpose. And we can put in the evidence that shows these are entirely fictitious entities. But what they were used for was false fronts to take in illicit funds and to make these transactions. Now you're saying they're false fronts, but they were not being used for unlawful purposes. Not to launder money, is that it? They weren't being used to launder money. Did you say false fronts? There's a... The money, it's... They're being used as part of the law. That money would have been more complex, and I have no doubt that they were being used to launder money. The question is, was the laundering here sophisticated, or as the enhancement says, complex or intricate offense conduct pertaining to the concealment... execution of concealment. And when you talk about the concealment, that's something we haven't touched on, which is that there's plenty of evidence that Fish was using SIM cards that would expire. In fact, in one of the first meetings... What's a SIM card? It's the chip that you put in your phone so that you could have different phone numbers, essentially, using the same device. But why is this so different from a straight forward going to variety liquor drinking case? Because what the court found is that when you put all these pieces together, you've got an organization here, you've got numerous couriers, you've got different drop-off locations scattered throughout Brooklyn, at a bakery, at a pizzeria. You've got these efforts to evade detection that appear to be used throughout the system. Fish explained that he used code words when he was trying to set up these transactions, code words for cash. He's using code words when he's speaking with Dweck to arrange the transactions. You take all of these pieces together, and the overall view and the conclusion of the court, which was a reasonable one based on all of this evidence, is that this was a sophisticated money laundering scheme. Do we know where the money that was being laundered came from? We don't know. The government wasn't able to trace all the way back to the source. Fish, at his co-conspirator, Levi Deutsch, explained to Dweck that this money came from the jewelry business. They assured him these are not drug proceeds. And the way we think it happens is that someone buys an engagement ring on 47th Street or somewhere else, and the merchant doesn't want to report that money as income. Maybe he reduces or gives a discount for buying in cash and then puts that money in to hide it as income. And the money is wheeled away or landed in some sophisticated way where the merchant can take that money back out. That's supposition. We don't know that. What we do know is that Fish and Deutsch both explained on several occasions where the money came from, and they said it was the jewelry business or the diamond business. Was it difficult for the government to trace where the money was coming from and going to? Yes, it was. Is that an indication of sophistication? Well, the purpose of the guideline, the purpose of the enhancement, is where the conduct is so complex it warrants additional punishment or it's hard for the government to track down what's happening. And money was put into these gamaks, which are tax-exempt organizations. We did see, and we did have their books, and we did see transactions from gamak to gamak. So it suggests that money was moving around in some sophisticated way, horizontally between the gamaks. And then you had cash coming down from these other, well, unknown sources, but we seem to have a good indication of where they came from. Well, some of the cases that I've looked at have involved fictitious entities and shell corporations. Practically all seem to fit within the examples given in the enhancement note. But this one would be an outlier, if I'm not mistaken. There are so few cases where this has been parsed. And there are some easy calls to make because there's clearly layering and there's clearly a shell corporation being used. And that's why I was so glad to see that Chan came down a couple weeks ago, where the court doesn't rely on any of those examples in the commentary to make a finding that using two books to hide smuggling proceeds is more complicated than not using books. And that was found to be sufficient to indicate that there was sophisticated money. And with that, I see my time has expired. If there's no further questions, we ask for your comments. Thank you. Thank you. I think I can handle a few minutes. I want to just take issue with something that counsel said at the beginning. He said we're dealing here with a very clear definition. Well, there's no definition at all, just sophisticated means. I don't see that in the context that he does. And then he said that when he was talking about how the judge goes at it, the judge would decide if there was a sophisticated means, then would see if there was facts to support it. I think that just gets it completely backwards. What the judge does, or did in any case, in this case, is see what the facts are and then decide in his mind, does that fit sophisticated means? He doesn't come up with a standard. I think that's what we're urging this court to do, is to set some kind of standards so the judges will, in fact, have something to measure their facts against. Can you say we know it when we see it? Well, I tried that. But you have to know that it's worked well in the other context. You have to know the application of it. It gives perfect examples of what sophisticated transactions means. I think that when they say these are typically, that's their idea of what it would be. And I think it could distray a little bit, possibly, maybe. But I think that those examples are meant to confine the courts, sentencing courts, to just what we said, stuff that is really sophisticated, complex, intricate. And the more you get away from that, and you know that standard, I think eventually it just collapses. Now, I just want to say that this is the first time that I've ever heard from the government, in this record, saying that they traced money from Gamach to Gamach. That's not in this record. I didn't know anything about that. I've never heard that. In fact, I don't know of any evidence in this record, certainly, that they even looked at these Gamachs to see whether the money, some of the money, was coming out of them that was being used for this laundering, as opposed to the jewelry or one of the other businesses. Would it have made a difference? Oh, well, yes. It might well have. I'm not saying it's dispositive, but that would be the most elementary type of laundering. Check in, cash out. If that was the case. But I'm not saying it was or it wasn't. It was the government's burden to prove that it was, and I don't think they did. It's true that there was talk about it coming from other businesses. That's so. Well, Mr. Finger talks about different sources of the cash, in other words, different charities. Why isn't that evidence of sophistication? I'm sorry. He talked about the money coming from other sources. The cash came from different businesses. Yes, he had a set of different charities. I think that's what he said. I think what he's saying is the cash came, supposedly, from a set of different sources, from other sources, from cash businesses. Although I'm still not clear how that business profits from giving their cash to someone. I was wondering. To take something off the top, it's a 10% fee. And be charitable. If the man who's in the jewelry business that was just described to us gets cash for a diamond ring and he wants to conceal it so he doesn't have to declare it, it's being suggested that he then gives it to a money laundering operation who can use it for these purposes, to earn fees and commissions, but that somehow, in the end, he's got to get his money back in some way. I don't know how he does that, and I don't understand it from the government's presentation either. But the fact is that there was evidence of that through my client's own mouth, if you will. But that's, I think, in a nutshell. Thank you very much for your time. We'll take your case under advisement.